The next matter, number 162272 and number 171402, Lisbeth Patricia Valerio Ramirez v. Jefferson B. Sessions. Yes, may it please the court, Mary Hoper for Petitioner Lisbeth Valerio. I'd like to reserve two minutes for rebuttal. You may have it. Thank you. There are two reasons why this court should grant the petition. First, the board erred in its interpretation of AEDPA 413F, rendering the words compliance with the protocol meaningless as to non-aggravated felons like Ms. Valerio. And second, even if AEDPA 413F only requires the Frantescu test as the board held, the board and the immigration judge did not apply the four Frantescu factors. It did not specify why her non-violent identity theft conviction caused her to present a specific non-abstract danger to the community, and it dismissed the import of her below-the-guidelines sentence and mischaracterized the district court judge's reasons for the sentencing below the guidelines. As a consequence, she will be deported to a country where it is more likely than not that she will face persecution. Now, AEDPA 413F's mandate to comply with the protocol has to mean something, and not just in the context of aggravated felons as the board held. It should mean that the offense be reserved only for the most extreme cases, exceptionally grave cases. Now, according to the United Nations High Commissioners for Refugees Handbook, the term particularly serious crimes is reserved for the extreme cases. The board, in matter of Frantescu, said that it is more serious. Isn't this, in the end, an attack on the Frantescu standard, which virtually every circuit has affirmed since the decision came out how many years ago?  Yes, and this court and the other circuits have said that's a permissible interpretation by the agency. So I don't think we can revisit that question. Even if this court agrees that AEDPA 413F means nothing more than the Frantescu standards, the Frantescu test... No, no, no, no, no, no, no. I'm sorry. We owe Chevron deference to decisions made by the BIA. And one of the reasons that this court remanded the case to begin with was to get the agency's views on these questions. We now have the agency's views. It's not a matter of what our views are. It's a matter of whether you can successfully attack the agency's views. All right? So tell me what's illegal or arbitrary about the agency's views. First of all, Your Honor, with respect to the Chevron question, this was an unpublished case, not a published decision about the meaning of AEDPA 413F. And second, even if it is true that the agency's view that the Frantescu test is the correct test, even if that is legally correct, this is a legal question about the application, the agency's failure to exercise, to apply... That's an interesting question to me as to... Well, there is a jurisdictional issue here, which we'll have to decide. And depending on how we decide it, that affects the scope of the arguments that we have review over. But the agency says we did apply the Frantescu standards. Petitioner may not like the way we applied them, but we did. And there is no error of law here. At most, it's an abuse of discretion standard of review as to whether we, the agency, correctly applied Frantescu. So are you saying we have de novo review over the question of application of the Frantescu standards? This Court has de novo review over questions of law, such as... Yes, but you see, that's what I'm clear about, why the application of the standards becomes a question of law. It becomes a question of law when it is whether all four factors were applied here. So here we have the immigration judge releasing Ms. Valerio on a $2,500 bond in 2011, saying she wasn't... and the judge legally had to find she wasn't a danger to the community. And then one year later, finding that her crime was a particularly serious crime. And danger to the community is the essential key that the Board has said is part of the Frantescu test. It is the most important factor. And they found that she was a danger to the community, that this... because it's an aggravated felony, they had to consider not just the identity theft, but the crime that it was in furtherance of. And that if you put all of that together, she did more than simply provide for her family. She had a 10-year scheme of identity fraud that also resulted in the aggravated crime of mail fraud, which involved close to $200,000 in welfare and other payments that she received that she was not entitled to. And that on the particulars of this crime, that she was a danger to the community. And her conduct showed that she was. So why is that error? So the 9th Circuit in Alphonsus, when the Board was considering resisting arrest, which there was no published case about whether a crime exactly like that had been found to be a particularly serious crime. So here there's no published Board decision about financial crimes. All of the published cases are about violent crimes and drug trafficking and possession of child pornography, why those are particularly serious crimes. The Alphonsus Court in the 9th Circuit remanded saying, the Board, when it's considering this new type of crime, should say why it falls on the wrong side of the particularly serious crime line. So if alien smuggling, which had the potential for harm in a matter of LS, because the person was hit under a van, is a particularly serious crime, then the Board should state, by reference, to give these statutory words meaning. To explain why it fits within this narrow category of crimes. Not just any crime, but one that's serious and particularly serious. They say we've done exactly that on the circumstances here. And you're saying, and we remanded to them to, among other things, answer those sorts of questions. They've now answered them. So I'm having trouble tracking your argument. The Board answered the question of the meaning. Because it's not published, we owe it no deference. Is that what your argument comes down to? This Court would not have to give automatic Chevron deference, because it was not published. But the Board, in 2016, on remand, stated, this is the meaning, described, this is the meaning of Edpin 413F. And then said, based on our prior decisions, and based on the immigration judge's reasoning, the Frantescu test was applied here, and the Frantescu test is all that needed to be applied. And even if this Court agrees, as a matter of law, that that's all that is required, it should review whether all four factors were applied. And these are legal questions. The agency's failure to apply all four factors, the Fourth Circuit in Yosefi, and the Ninth Circuit in Afridi, have both said that the failure to apply all four factors, and particularly that fourth factor, the dangerousness, which is the essential key, the pivotal standard, is the most important factor. And it should be described in a way that is non-abstract. So the Board here spoke about generalities, about identity theft, and why that was bad. The immigration judge said that mail fraud didn't reach the issue of mail fraud, whether that was particularly serious, but made the finding on the identity theft conviction. And the immigration judge also did not explain why she could be not a danger in the bond context, but then one year later was a danger on the same facts and circumstances in the particularly serious crime context. So that is an error of law that this Court can review. And what is the legal standard that describes the error of law? You've just told us what was deficient. What is the legal standard under which that deficiency would call for a reversal or remand? It would be whether the Board actually applied all of the factors. So the standard would be de novo review as a legal issue. We would give de novo review? As to this legal question of whether the Board applied all of the factors. Even if the Board says, you know, we applied all the factors, A, B, C, and D, we would look further and say, did they come out the way we would have come out, which is what de novo review would give you? Is that what we would do? No, this Court would look to whether the agency below has done more than simply state the factors, whether the agency below has addressed all of the facts, circumstances, and nature of the crime. So in effect, it's a reasonable discussion or a reasonable consideration standard. Yes, yes. Should this Court look at this through an arbitrary and capricious lens, which is what the Court did in River Street Donuts reviewing an administrative appeals office decision, then it would look to whether it was a reasoned decision. And State Farm would say, was there a missing, did the Board fail to consider an important aspect of the problem? And here, Ms. Valerio argues, we argue that the Board and the immigration judge did not state, did not apply the dangerousness factor. Now, when the immigration judge wrote her decision, the standard that she wrote out about the Francesco test, she cited to matter of NAM, a 2007 decision, which when asserting the factors, does not lay out the factor of dangerousness. It becomes a three-factor test. And then the immigration judge went on to apply that, and the judge talks about seriousness, but does not talk about why her crime made her a non-abstract danger to the community. That is presumably because the judge was relying on matter of NAM from 2007. The judge didn't have the benefit of the Board's decision in GGS in 2014, where the Board clarified that the dangerousness prong is the pivotal element in the particularly serious crime analysis. And that, of course, is very important because all of the prior cases applying the Francesco test discuss why violent crimes are danger, the person is a danger to the community, armed burglary, armed robbery, those types of crimes, looking at the facts and circumstances and nature of those crimes. This is a different kind of crime. This is a financial harm crime. So the Board should have explained why that squares with this important statutory reference to dangerousness. Thank you. Counsel, before you start, I would like to explain why we denied your motion. The PSR, the pre-sentence report that was referred to in this case, is a matter of public record. The only thing that is not is the statement of reasons by the district court for the sentence given, which presumably the agency also reviewed. We thought it was quite possible to have oral argument without reference to the statement of reasons. So I just thought that might be helpful to you. So I may discuss what is in the pre-sentence report? Yes, you may. Ah, that is helpful. Thank you. And just as a general matter, courts of appeals almost never close courtrooms. It is, it would take something extraordinary to make us do that. And it would involve a matter of national security or something like that. Okay? Thank you for explaining. Okay. Good morning, Your Honors. My name is Margaret Keeney Taylor. I represent the government in this matter. Speak up, please. Yes, I can do that. It appears that the court is interested in the proper standard of review if it reaches the particular serious crime determination. The appropriate standard of review is the abuse of discretion standard. And that standard looks to see if the agency rationally explained its reasoning or its determinations and whether the determinations were consistent with established policies. Well, your sister posits that if the standard for determining a particularly serious crime has four elements and one element is ignored in the board's decision, that that becomes a question of law. The board has committed a legal error by deciding the case based on three factors rather than four and therefore gets a different standard of review. What's your response to that? Well, that's a question this court doesn't have to review and have to reach because the immigration judge on the board did actually discuss all four of the Francescu factors. And the response that your sister would probably make to that is yes, but the discussion of dangerousness to the community was so superficial and non-case specific that it amounted to no discussion at all. Well, there are two responses to that. First of all, which goes back to your first question, actually. First of all, there's considerable case law in this circuit and also in the board jurisprudence that there does not have to be a separate analysis of dangerousness. That dangerousness, that once a crime is determined to be particularly serious, that dangerousness doesn't have to be separately analyzed because the crime is inherently dangerous because of the nature of the crime. I think she receded a bit from that argument, that oral argument today. And as I've said, the Francescu standards have been well accepted by the courts for many years now. Right. And it considers dangerousness sort of in the context of the other factors. Her argument is even if you take Francescu, there was an inadequate articulation about dangerousness. And as a matter of law, the IJ and the BIA should have discussed that in the context of this case more fulsomely than they did. Well, dangerousness was discussed in the second board decision, which on the administrative record, page 5, and in the second petition for review, 17-1402, it was discussed in the third board decision on administrative record, page 3. And basically what the board said at that time was, look, and now I'm going to talk about what was in the pre-sentence report. Look, you defrauded this U.S. citizen in Puerto Rico for 10 years. That makes you a dangerous person. It is a danger to the community when someone gets defrauded like that. And not only did you defraud this individual, but you also defrauded the U.S., not necessarily the U.S. government, but the government, when you took all these benefits in your duplicate identity. So that is how the board addressed danger. I would like to go back to the point, though, about a matter of GGS and what GGS said about danger to the community. I've got it open in front of me, and on page 344 of GGS, and the site is in the briefs, the board did look at danger to the community, but then added, once an offense is determined to be particularly serious, no separate determination of danger to the community is required. So even in 2014, the board is still saying there does not need to be an independent analysis of danger to the community, other than looking at how the particularly serious crime inherently is dangerous. Let me go through some hypotheticals. Suppose she engaged in a 10-year scheme of identity theft, which affected only one individual. You said the board here rested on two things. One was her crime as to the individual, and the other is the crime as to the government benefits. If the board had rested only on the offense as to an individual, would that have been enough to be a danger to the community? I think the board could have reasonably reached that conclusion, yes.  And as to the benefits fraud that she engaged in, they say, look, that really wasn't part of the identity fraud. It was the separate offense to which I understand you've made two arguments. One is sort of the crime was aggravated identity theft, which requires that it be done at the same time as another crime. And the second is this is sort of like relevant conduct that district judges consider all the time, and there's no prohibition on the board considering relevant conduct. Well, I like to take a different kind of approach to that. The defrauding the government was part of the identity theft because she used one name for all the employment and education she got and houses she bought and loans she took out. And then she used another name for the government benefits. And actually when she was challenged on the government benefits, she would use her other identity to dispute. So that was part of the identity theft. The aggravated part is that she also engaged in mail fraud. And so the board referred to the mail fraud but didn't look intensely at the mail fraud. And so that made the identity theft aggravated. That's how it became aggravated. What was the mail fraud? I thought it was an association with the benefits. You're right, it was. Okay. She also argues that because there was no published opinion by the board as to non-aggravated offenses, that that excuses us from Chevron deference to the board's decision, in this case, interpreting the statute. That's not the law of the circuit as I understand it. There doesn't need to be a published decision on every dimension of how this could arise for the court to give deference. Has the board, in fact, published any decisions in this area? Non-aggravated felons for a particular serious crime, the closest I could find was matter of LS, which is not a non-aggravated felony but is an aggravated felony with a sentence of less than five years, which is a close relative of non-aggravated felonies. Okay. Thank you. Do you have more to say to us? No, Your Honors. Thank you very much for the privilege of arguing. The government urges the court to deny the petition for review. Ms. Builder. Thank you. With respect to the dangerousness analysis, separate determination of dangerousness, I think all of the discussion around separate determination of dangerousness has led the board, and Judge Henry in the Tenth Circuit noted this, and NAMD Holder, to state the factors as missing the dangerousness analysis, to lay out Frantescu as a three-factor instead of a four-factor test. And that, of course, threatens the reasonableness of the agency's decision at all to have supposedly eliminated this in saying it's in the service of there's no separate determination of dangerousness. But, of course, because when the board first held that there's no separate determination of dangerousness in matter of carbaye, they said that because the dangerousness analysis was the essential key of the Frantescu test, it was the most important factor that linked it to the statutory terms and justified a consequence of that finding, which is this person is not even allowed to present the facts of persecution to the judge. So because of that, and the immigration judge stated the factors that way in stating the factors before she went on to apply them. Now, the immigration judge also did not say whether mail fraud was a particularly serious crime. She specifically said, we are not reaching that issue. So this court should not be reviewing whether mail fraud is a particularly serious crime. Why not if it's part of the aggravated identity theft? Because the identity theft itself, while as part committing it in the service of a mail fraud, it still is, the immigration judge below certainly did consider it a separate offense that she didn't need to reach because of the identity theft, and then addressed only the identity theft. I'm sorry. Well, it's not a separate offense. It's part of the aggravated identity theft. I'm not quite sure what arguments were made or what the immigration judge meant, but as a matter of law, the identity theft and the aggravated nature of it had to be before the IJ and the BIA, and the BIA certainly considers it. See, it seems to me that because the aggravated identity theft can only be viewed as aggravated identity theft in service of mail fraud, because identity theft isn't aggravated except in conjunction with some other crime. The only rational thing that the IJ could have meant was that she didn't have to look at mail fraud as an independent crime because it was already wrapped into the discussion of aggravated identity theft. But that still doesn't lead to the conclusion of dangerousness that the IJ should have found here, and I see we're out of time. Thank you very much. Thank you. Thank you.